UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Christine Clark, | ) | Civil Action No.: 6:14-4313-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| Brian K. Bridges, Justin Moody, | ) | |
| Robert R. Wilkie, Ryan Abernathy, | ) | |
| Brandon Scott, Sheriff Ricky | ) | |
| Chastain, Sheriff Ray Watson, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On August 27, 2014, Plaintiff Christine Clark ("Plaintiff" or "Clark") filed this 42
U.S.C. § 1983 action in the Court of Common Pleas for Laurens County, South Carolina,
alleging that Defendants Brian K. Bridges ("Bridges"), Justin Moody ("Moody"), Robert R.
Wilkie ("Wilkie"), Ryan Abernathy ("Abernathy"), Brandon Scott ("Scott"), and Kenneth
Ray Smith ("Smith")[1] (collectively "Individual Defendants") violated her Fourth, Eight, and
Fourteenth Amendment rights during a search of her home, seizure of property, and her
associated arrest. (ECF No. 1-1.) Plaintiff also brought related claims for federal
conspiracy, state civil conspiracy, and declaratory judgment. (*Id.*) On November 5, 2014,
Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.
(ECF No. 1.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule
73.02(B)(2)(d) D.S.C., this matter was referred to United States Magistrate Judge
Jacquelyn D. Austin, for consideration of pretrial matters. On May 11, 2015, with leave of

---

[1] Defendant Smith was terminated pursuant to a stipulation of dismissal filed on September 18, 2015.
(ECF No. 31.)

the Court, Plaintiff filed an Amended Complaint adding Defendants Sheriff Ricky Chastain ("Chastain") and Sheriff Ray Watson ("Watson") (collectively "Sheriff Defendants") and a South Carolina Tort Claims Act claim against Chastain and Watson. (ECF No. 24.) The Magistrate Judge prepared a thorough Report and Recommendation ("Report") which recommends that Plaintiff's motion for partial summary judgment be granted and part and denied in part, and that Defendants' motion for summary judgment be granted in part and denied in part. (ECF No. 55.) Plaintiff and Defendants filed timely objections to the Report. (ECF Nos. 61; 63.) Additionally, the parties filed replies to one another's objections. (ECF Nos. 67; 68.) For the reasons set forth herein, the Court adopts the Report.

## BACKGROUND AND PROCEDURAL HISTORY

The Report sets forth in detail the relevant facts and standards of law, and the Court incorporates them herein, summarizing below only in relevant part. Plaintiff's operative pleading is her Amended Complaint, filed on May 11, 2015. (ECF No. 24.) In her Amended Complaint, Plaintiff alleges various violations of her rights under the U.S. Constitution as well as state law claims. (*Id.*) Specifically, Plaintiff brings suit against Individual Defendants under § 1983 for violation of her Fourth Amendment right to be free from unreasonable searches and seizures as well as unlawful arrest.[2] (*Id.* ¶¶ 14-32.) In general, Plaintiff's version of events is that she was at home dressed in her panties and about to take a shower when Individual Defendants: (1) arrived at her home to investigate the potential theft of a lawnmower; (2) burst through the back door, grabbed

---

[2] Plaintiff styles her § 1983 claim as invoking Eighth and Fourteenth Amendment rights as well (*see* ECF No. 24 ¶ 31), but the facts pled reveal no theories of liability that touch on constitutional principles established by those Amendments.

2

her and threw her on the ground, causing her to suffer multiple bruises; (3) photographed her in her panties, over her objection and to her humiliation and emotional distress; (4) verbally berated her, calling her foul names, (5) arrested her without a warrant for baseless charges; (6) grabbed her in an offensive manner and dragged her outside to be transported to the detention center; (7) searched her home without her consent and damaged her property in the process; (8) seized numerous items, including $200 and a cell phone, without a warrant; and (9) later obtained an invalid warrant, which did not and could not justify further searches inside her home. (*Id.* ¶¶ 14-28.) Plaintiff also brings a federal conspiracy claim, alleging that Individual Defendants conspired to violate 42 U.S.C. § 1983, and a state civil conspiracy claim, alleging that Individual Defendants conspired to deprive her of her federal and state rights, causing her special damages in the form of physical and emotional injuries. (*Id.* ¶¶ 33-38.) Further, Plaintiff seeks a declaratory judgment stating that All Defendants violated her rights under the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Sections Ten and Fifteen of Article I of the South Carolina Constitution. (*Id.* ¶¶ 39-42.) Lastly, Plaintiff brings a South Carolina Tort Claims Act claim against Sheriff Defendants, alleging that: (1)Individual Defendants acted within the course and scope of their employment when they engaged in the alleged conduct described above; (2) that the Sheriffs are liable for the Individual Defendants actions and inactions; and, (3)  that the Sheriffs were grossly negligent in their duties and responsibilities to have and/or implement appropriate policies regarding training, supervision, and monitoring of employees to prevent the misconduct that allegedly occurred here (*Id.* ¶¶ 43-47.)

3

On September 18, 2015, Plaintiff moved for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 32.) Defendants responded (ECF No. 41) and Plaintiff replied (ECF No. 46) in turn. On November 16, 2015, Defendants filed their own motion for summary judgment, asserting that they are entitled to judgment on all of Plaintiff's claims. (ECF No. 45.) Plaintiff responded (ECF No. 48) and Defendants replied (ECF No. 52) in turn. After consideration of all the relevant briefing, the Magistrate Judge issued a Report recommending that Plaintiff's motion for partial summary judgment be granted in part and denied in part, and that Defendants' motion for summary judgment be granted in part and denied in part. (ECF No. 55.) The Court has reviewed the objections (ECF Nos. 61; 63) to the Report and finds them to be without merit. Therefore, the Court will enter judgment accordingly.[3]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."

---

[3] As always, the Court says only what is necessary to address the parties' objections against the already meaningful backdrop of a thorough Report of the Magistrate Judge, incorporated by specific reference, herein, to the degree not inconsistent. Comprehensive recitation of law and fact exists there.

*Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## DISCUSSION

In the Report, the Magistrate Judge helpfully summarizes the various issues presented in the parties' respective motions for summary judgment. (ECF No. 55 at 10.) Plaintiff's motion alleges she is entitled to summary judgment on the following specific issues: (1) unconstitutional warrantless arrest; (2) unconstitutional pre-warrant search of the curtilage of her home; (3) unconstitutional post-warrant search of her home; (4) unconstitutional seizure of guns; and, (5) unlawful destruction of photographs taken during the course of the arrest. (*See* ECF No. 32-1 at 8-14.) Defendants allege that they are entitled to summary judgment on all of Plaintiff's claims. (*See* ECF No. 45-1 at 6-27.)

**Defendants Abernathy and Scott**

The Magistrate Judge begins her analysis by rejecting Defendants arguments that Abernathy and Scott are entitled to summary judgment because they were employed by the Abbeville County Sheriff's Office, they had no jurisdiction in Laurens County,[4] and they were not physically involved in Plaintiff's arrest and/or seizure. (ECF No. 55 at 10-11; *see* ECF No. 45-1 at 23.) Defendants argue that Abernathy and Scott were present merely to identify the stolen property and observe the search and/or seizure of the stolen property. (ECF No. 45-1 at 23.) However, as the Magistrate Judge notes, Defendants fail to cite any legal authority to support the position. The Court agrees with the Magistrate

---

[4] The events in question came about as a result of the Abbeville County Sheriff's officers coordinating with the Laurens County Sheriff's officers to recover property that had been stolen in Abbeville County and removed to Laurens County. (Scott Dep., ECF No. 41-7, p. 35, ll. 19-23.)

Judge that Abernathy and Scott's participation in the search and seizure is sufficient evidence upon which a reasonable juror could conclude that they were personally involved, even if indirectly. (ECF No. 55 at 11 (citing *Dockery v. Tucker*, No. 97-CV-3584(ARR), 2006 WL 5893295, at *14 (E.D.N.Y. Sept. 6, 2006) (holding an FBI agent was not entitled to summary judgment for lack of personal involvement in a search because his participation in a task force and descriptions at trial of the acts at the scene were sufficient evidence upon which a reasonable juror could conclude the agent was personally involved, even if indirectly, in the search)).) Defendants make no specific objections to the Magistrate Judge's reasoning, and the Court finds that said reasoning evinces no clear error. *See Diamond*, 416 F.3d at 315 (holding *de novo* review unnecessary in the absence of a timely filed, specific objection). Accordingly, the Court denies Defendants' motion for summary judgment to the extent it is based on Abernathy and Scott's putative lack of personal involvement.

**Warrantless Arrest of Plaintiff**

The Magistrate Judge correctly explains a relevant distinction in the legal standard that applies to Plaintiff's arrest depending on where it took place. (ECF No. 55 at 11-12.) In general, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). A warrantless arrest inside a suspect's home, however, requires a

6

different analysis because law enforcement officers are prohibited from entering a suspect's home without consent or a warrant. *See Payton v. New York*, 445 U.S. 573, 586 (1980). Such an arrest is only permissible if both probable cause *and* exigent circumstances are present. *Id.* at 590.

As noted by the Magistrate Judge, a genuine issue of material fact exists with respect to the circumstances of Plaintiff's arrest. (ECF No. 55 at 13.) It is undisputed that Plaintiff was arrested without a warrant. Defendants' description of the arrest begins with Plaintiff exiting the residence, Bridges yelling to let her know that law enforcement officers were there, and then Plaintiff walking over to Bridges while other officers also walked toward him. (Bridges Dep., ECF No. 41-4, p. 28 l. 24 – p. 29 l. 7; p. 35 ll. 1-17.) Defendants' description ends with Plaintiff being arrested after being given *Miranda* warnings and answering the officers' questions about the stolen lawn mower. (Moody Dep., ECF No. 41-3, p. 22 l. 18 – p. 24 l. 25.) Under this version of events, because the arrest took place outside of the home, Defendants would only have to establish that they had probable cause to believe that a criminal offense—receiving stolen goods—had been or was being committed by Plaintiff in order to make the warrantless arrest lawful. *See Davenpeck*, 543 U.S. at 152.

Plaintiff, on the other hand, describes the arrest as beginning in her laundry room, where she was allegedly grabbed by Bridges and pulled outside. (Clark Dep., ECF No. 48-4, p. 142 l. 19 – p. 147 l. 23.) Under this version of events, because Bridges entered Plaintiff's home to carry out the arrest, Defendants would have to establish both that they had probable cause and that exigent circumstances were present in order to make the

7

warrantless arrest lawful. *See Payton*, 445 U.S. at 590. The Magistrate Judge concluded that this factual dispute affects the standard under which the Court must analyze Plaintiff's arrest and recommended that both motions for summary judgment be denied with regard to Plaintiff's Fourth Amendment claim that she was subject to an unlawful arrest. (ECF No. 55 at 13-14.) Additionally, because this issue must await determination of the relevant facts at trial, the Magistrate Judge concluded that qualified immunity, as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and its progeny, is also inappropriate. (*Id.* at 13.)

Plaintiff objects to this portion of the Report by arguing that the Magistrate Judge erred when she concluded that only probable cause would have been required for uninvited law enforcement to arrest Ms. Clark on the curtilage of her home. (ECF No. 63 at 1.) Plaintiff cites *Pena v. Porter*, 316 F. App'x 303, 316 (4th Cir. 2009) for the proposition that in the Fourth Circuit, "the curtilage of a home is afforded the same Fourth Amendment protection as the home itself." (ECF No. 63 at 1.) Thus, Plaintiff avers, Defendants must show both probable cause *and* exigent circumstances to justify the warrantless arrest whether it occurred inside *or* outside the home. (*Id.*) Plaintiff further argues that Defendants cannot show exigent circumstances and she is therefore entitled to summary judgment. (*Id.* at 2-3.)

The principle from *Pena* upon which Plaintiff relies is based on the Fourth Circuit's prior decisions in *Rogers v. Pendleton*, 249 F.3d 279 (4th Cir. 2001) and *Alvarez v. Montgomery County*, 147 F.3d 354 (4th Cir. 1988). *Pena*, *Rogers*, and *Alvarez* all addressed a warrantless *search* of the curtilage, not *an arrest* occurring on the curtilage.

8

Accordingly, Plaintiff's reliance on these cases is inapposite and does not reveal any error in the Magistrate Judge's analysis. Plaintiff's objection is overruled.

Defendants made no objection to this portion of the Report. Consequently, the Court adopts the Magistrate Judge's analysis and recommendation, and hereby denies both motions for summary judgment with regard the warrantless arrest issue.

**Pre-Warrant Search of the Curtilage**

The Magistrate Judge recommends that Plaintiff's motion for partial summary judgment should be granted with respect to her claim that her Fourth Amendment rights were violated when Defendants searched the curtilage of her home, and that Defendants' corresponding motion for summary judgment on this issue should be denied. (ECF No. 55 at 18.) For the reasons set forth below, the Court agrees and adopts the Magistrate Judge's analysis and recommendation.

In the Report, the Magistrate Judge correctly states the relevant law regarding searches of curtilage by law enforcement (*see* ECF No. 55 at 14-15), which explication the Court largely incorporates here.[5] Ordinarily, no Fourth Amendment violation occurs when officers "knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants." *Rogers v. Pendleton*, 249 F.3d 279, 289 (4th Cir. 2001). Moreover, under appropriate circumstances, officers may circle to the back of the home without a warrant. *Alvarez v. Montgomery Cty.*, 147 F.3d 354, 358 (4th Cir. 1998) (finding it reasonable for officers responding to a 911 call complaining of an underage drinking party to enter a homeowner's backyard when "circumstances indicated they might find

---

[5] Note that Defendants do not contend that the areas they searched were outside the boundaries of the curtilage; therefore, the Court will forgo recitation of the law surrounding the definition of curtilage and how it pertains to the case *sub judice*.

the homeowner there" because a sign affixed to a lamppost in the front driveway read, "Party In Back," and included an arrow pointing toward the backyard). The right of officers to "knock and talk," however, is "not the right to make a general investigation in the curtilage based on reasonable suspicion." *Rogers*, 249 F.3d at 289. "The police may not . . . conduct a full search of the curtilage without a warrant or another justification that would be sufficient for entry into the home itself." *Edens v. Kennedy*, 112 F. App'x 870, 874 (4th Cir. 2004) (citing *Rogers*, 249 F.3d at 287, 289). "A contrary rule would eviscerate the principle of [*Oliver v. United States*, 466 U.S. 170 (1984)] and [*United States v. Dunn*, 480 U.S. 294 (1987)] that the curtilage is entitled to the same level of Fourth Amendment protection as the home itself." *Rogers*, 249 F.3d at 289.

The Magistrate Judge was not persuaded by Defendants' contention that their entry into the backyard was appropriate under *Alvarez* because they walked around the back of Plaintiff's home in order to locate and talk to an inhabitant. (*See* ECF No. 55 at 15-16.) Several officers testified that when they arrived at the residence, some officers went to the front door of the mobile home and knocked while Abernathy, Bridges, and Moody walked around to the rear. (*See* Scott Dep., ECF No. 32-11, p. 13 l. 17 – p. 14 l. 1; Abernathy Dep., ECF No. 41-2, p. 12 ll. 2-5; Bridges Dep., ECF No. 41-4, p. 25 ll. 3-12.) The Magistrate Judge found that Defendants failed to direct the Court to any evidence to suggest there was reason to believe that knocking on a backdoor would produce a different result from knocking on the front door. (ECF No. 55 at 16 (citing *Pena v. Porter*, 316 F. App'x 303, 314 (4th Cir. 2009) (finding that when no one answered the front door of a trailer home, unlike in *Alvarez* or *United States v. Bradshaw*, 490 F.2d

1097 (4th Cir. 1974), there was no reason to expect that knocking on a back door would produce a different result)).)

Furthermore, the Magistrate Judge found that, even if walking around the residence to knock on the back door was not a Fourth Amendment violation, Bridges testified to two additional investigative actions that exceeded the purpose of walking around the house to knock on the back door. (ECF No. 55 at 16.) Specifically, after no one responded when Bridges knocked on the back door, he continued walking around the residence and came upon two pieces of ply board, sitting on hinges, which came together like doors and looked like a barn or shop. (Bridges Dep., ECF No. 41-4, p. 28 ll. 10-22.) Bridges was unable to tell if this was part of the residence or not (*Id.*, p. 28 ll. 22-23), but it turns out this was the "laundry room," in which Plaintiff asserts she was arrested, and which contained a shower, a hot water heater, a washing machine and dryer, a table, and two chairs (Clark Dep., ECF No. 32-9, p. 133 l. 19 – 134 l. 19). First, Bridges stated, "I just stood – the doors were open. I just stood in the door, kind of looking around, to see what kind of place this is or whatever." (Bridges Dep., ECF No. 41-4, p. 28 l. 24 – p. 29 l. 1.) Second, while waiting on the subsequently obtained search warrant, Bridges walked around the property to look at old cars in the backyard in order to see if he could "tell anything was recognizable about them being, you know, stolen or anything." (*Id.*, p. 44 ll. 1-7.) These actions, the Magistrate Judge concluded, were Fourth Amendment violations independent of whether walking around the residence to knock at the back was unlawful, because "the right to knock and talk does not entail a right to conduct a general investigation on a home's curtilage." *Covey v. Assessor of Ohio Cty.*,

777 F.3d 186, 193 (4th Cir. 2015) (citing *Rogers*, 249 F.3d at 289).

Given that the curtilage enjoys the same Fourth Amendment protections as the home itself, Defendants must have possessed probable cause plus either a warrant or exigent circumstances to search the property in this manner. *See Pena*, 316 F. App'x at 313-16. Courts in the Fourth Circuit consider the following factors when determining whether exigent circumstances are present:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

*United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981) (citing *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973)). Applying the *Turner* factors to the instant exigent circumstances analysis, the Magistrate Judge found that it would not have been reasonable for Defendants to believe exigent circumstances existed where: (1) the contraband was a lawn mower in plain view on the property; (2) no evidence exists to support a possibility of danger to the officers guarding the site; and, (3) the mower would not have been readily destructible. (ECF No. 55 at 17.) Accordingly, the Magistrate Judge determined that Plaintiff's motion for partial summary judgment should be granted with respect to this claim unless Defendants can establish they are entitled to qualified immunity.

Here, Defendants object that the Magistrate Judge erred in finding an absence of exigent circumstances. (ECF No. 61 at 2.) They cite *Gould v. Davis*, 165 F.3d 265 (4th Cir. 1998), for the principle that the exigent circumstances exception to the warrant

requirement "basically encompasses officer safety and the destruction of easily-disposed evidence." (ECF No. 61 at 2 (quoting *Gould*, 165 F.3d at 270-71).)[6] According to Defendants, the Magistrate Judge erred because the officers were not just looking for a lawn mower as contraband, but searching for other stolen property as well, including a four-wheeler, miscellaneous tools, and a tool bag with a D-ring. (*Id.*) The fact that some of the missing items were small and more easily disposed of, destroyed, or hidden than the lawn mower, argue Defendants, means that the officers reasonably believed exigent circumstances existed. (*Id.* at 2-3.)

This line of argument is unpersuasive. For one thing, Defendants do not cite a single piece of authority to show that the contraband in question here, including all of the items listed above, is even remotely analogous to a case where the potential for destruction or disposal of prospective evidence triggers the presence of exigent circumstances. For another, Defendants have failed to direct the Court to any evidence that any officer *actually had concerns* about the destruction or disposal of evidence. If exigent circumstances exist in this case, then they exist in every case. The Fourth Amendment cannot tolerate such a metric for exigent circumstances. The Defendants' objection is overruled.

As the Magistrate Judge deftly explains, qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person

---

[6] Defendants also cite *Mincey v. Arizona*, 437 U.S. 385 (1978), for the proposition that a warrantless search is permitted when probable cause to search exists and officers reasonably believe that contraband or other evidence may be destroyed or removed before a search warrant could be obtained. (*See* ECF No. 61 at 2.) *Mincey* is hardly analogous to the issues presented here; that case dealt with the lawfulness of a warrantless search at a murder scene. *Mincey*, 437 U.S. at 387-95. Furthermore, the U.S. Supreme Court held that the warrantless search of the house in question *was not* constitutionally permissible simply because a homicide had recently occurred there. *Id.* at 395.

would have known." *Harlow*, 457 U.S. at 818. If the constitutional right of a § 1983 plaintiff was clearly established at the time of the alleged violation, such that an objectively reasonable official in the defendant's position would have known of the right, that official is not entitled to immunity. *See id.* Conversely, "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In determining whether qualified immunity applies here, the Court must determine: (1) whether Plaintiff has alleged the deprivation of an actual constitutional right; and, (2) whether that right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Moreover, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 818-19). A right is "clearly established" if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

The Magistrate Judge determined that Plaintiff's right to be free from unreasonable searches was violated when Defendants searched the curtilage of her property, and that the right in question was clearly established. (ECF No. 55 at 18 (citing *Pena*, 316 Fed App'x at 316 (affirming the district court's denial of qualified immunity and

14

noting that the "decisions in both *Rogers* and *Alvarez* make plain that the curtilage of a home is afforded the same Fourth Amendment protection as the home itself")).) Consequently, the Magistrate Judge found that Defendants were not entitled to immunity. (ECF No. 55 at 18.)

Here, Defendants object that the Magistrate Judge erred in denying them qualified immunity because the Magistrate Judge's finding that there were no exigent circumstances was based on an assumption that the contraband in question was limited to a lawn mower. (ECF No. 61 at 3.) As explained above, there is no evidence of record to demonstrate the presence of exigent circumstances. Defendants' objection is overruled.

Lastly, Defendants object to the Magistrate Judge's recommendation that summary judgment on this claim be granted to Plaintiff and denied to them because the lawn mower was seized pursuant to the plain view doctrine. (*Id.* at 3.) This doctrine holds that if an article is in plain view, "neither its observation nor its seizure would involve any invasion of privacy." *Horton v. California*, 496 U.S. 128, 133 (1990). It is undisputed that the lawn mower was in plain view when the officers pulled up to the home. Therefore, its observation and seizure would have been lawful without a warrant. *See id.*; *Florida v. Jardines*, 133 S. Ct. 1409, 1424 (2013). However, this says *nothing* about the lawfulness of the *full search* Defendants performed on the property prior to obtaining a warrant. *See Edens*, 112 F. App'x at 874 (stating that in the absence of a warrant or alternative justification sufficient to justify entry into the home itself, officers may not conduct a full search of the curtilage). Defendants have readily admitted that they were looking for

15

more than just the lawn mower. In fact, the purported need to quickly search for additional stolen items is the entire basis of their argument for the presence of exigent circumstances. (*See* ECF No. 61 at 2-3.) It is counterproductive, therefore, for them to argue that the lawn mower's plain-view status justified the pre-warrant search of the remainder of the curtilage.

The Court agrees with the Magistrate Judge both that (1) the pre-warrant search of the curtilage violated Plaintiff's Fourth Amendment right to be free from unreasonable searches, and (2) that Plaintiff's right in this respect was clearly established. Accordingly, the Court overrules Defendants objection in its entirety, adopts all relevant portions of the Report, grants summary judgment in Plaintiff's favor on this claim, and denies Defendants motion for summary judgment on this claim.

**Post-Warrant Search of the Home**

In the Report, the Magistrate Judge correctly states the law applicable to the requirements for the contents of a search warrant. (ECF No. 55 at 18-19.) The Fourth Amendment provides that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The "particularity" requirement is meant to ensure that citizens are not subjected to "a general, exploratory rummaging in [their] belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), and that nothing is left "to the discretion of the officer executing the warrant," *United States v. Robinson*, 275 F.3d 371, 381 (4th Cir. 2001) (citing *Marron v. United States*, 275 U.S. 192 (1927)). "'The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of

16

items involved . . . (T)here is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized.'" *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979) (quoting *United States v. Davis*, 542 F.2d 743, 745 (8th Cir. 1976) (alterations in original)). Additionally, in assessing the adequacy of the specificity in a warrant, all parts should be read together. *United States v. Weston*, 962 F.2d 8, at *5 (4th Cir. Apr. 30, 1992) (unpublished table decision) (citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)).

The Magistrate Judge concluded that the description of property on the search warrant, which reads "Stolen property which was taken during the theft of the listed orange in color all terrain mower from Abbeville County" (ECF No. 41-10 at 3), was insufficiently specific to survive Fourth Amendment scrutiny. (ECF No. 55 at 19.) She reasoned that the only item specifically mentioned in the search warrant is the lawn mower, which had already been seen by the officers in plain view outside the residence. (*Id.*) Additionally, the Magistrate Judge notes that the affidavit made by Wilkie in obtaining the search warrant, when explaining the reason for the affiant's belief that the property sought was on the subject premises, merely stated, "Other items were stolen from the incident location when this orange all terrain mower was stolen, therefore it is believed that these other items could be located in or around the above listed residence and property." (*See* ECF No. 41-10 at 4.) In the Magistrate Judge's view, the description of property on the search warrant "is not descriptive at all. It is simply conclusory language."[7] (ECF No. 55 at 19 (quoting *United States v. LeBron*, 729 F.2d 533, 537 (8th

---

[7] In *LeBron*, the Eighth Circuit held that a warrant authorizing the search of the defendant's residence for certain specific items as well as "any records which would document illegal transactions involving stolen property" and "other property, description unknown, for which there exists probable cause to believe it to

17

Cir. 1984)).)

Upon finding that the search of Plaintiff's home was conducted pursuant to a facially invalid warrant, the Magistrate Judge concluded that the search itself, and the seizure of property connected therewith,[8] violated Plaintiff's Fourth Amendment rights (ECF No. 55 at 19-20), because "a search or seizure based upon an invalid warrant is the same as a warrantless search and is also unconstitutional." *Truelove v. Hunt*, 67 F. Supp. 2d 569, 577 (D.S.C. 1999) (citing *United States v. Leon*, 468 U.S. 897 (1984)). Furthermore, "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 477-78 (1971)). Accordingly, the Magistrate Judge found that Plaintiff's motion for partial summary judgment should be granted with respect to this claim unless Defendants can establish that they are entitled to qualified immunity.

Here, Defendants object and assert that the Magistrate Judge erred by finding the warrant was invalid on its face based on the description of the property contained therein. (ECF No. 61 at 4.) Defendants cite a broad swath of legal authority in support of their assertion that courts should not be hyper-technical in their scrutiny of search

---

be stolen" was impermissibly broad, and that firearms which were discovered and seized after the specifically described items in the warrant had already been located should have been suppressed. 729 F.2d at 536-39. Accordingly, the *LeBron* court reversed the judgment of conviction and remanded the case to the district court for further proceedings. *Id.* at 539. The Eighth Circuit reasoned that, given the general nature of the description of property, "[n]o guidelines [were] provided to guide the officers in their execution of the warrant or to limit their discretion," and "[n]o means of distinguishing between stolen property and property that is not stolen is delineated; moreover, the distinction is not one that is readily apparent." *Id.* at 537. The constitutional danger of such non-specific directions, the court noted, is that they "provide no protection against subjecting a person's lawfully held property to a general search and seizure," and "[s]uch a general authorization allows officers to search indiscriminately throughout one's house and to seize anything they please." *Id.*

[8] During the search inside the home, Defendants found and seized guns and marijuana. (Moody Dep., ECF No. 41-3, at p. 39 l. 9 – p. 43 l. 17.) The guns were seized because, Buddy Patton, who also lived at the residence, was a convicted felon and could not possess the weapons. (*Id.*, p. 43 ll. 14-17.)

warrants. (*See* ECF No. 61 at 4-5.) "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470-71 (1985). Furthermore, the Fourth Circuit has stated:

> A search conducted pursuant to a warrant is limited in scope by the terms of the warrant's authorization. *Walter v. United States*, 447 U.S. 649, 656 (1980) (plurality); *see also United States v. Squillacote*, 221 F.3d 542, 555 (4th Cir. 2000). However, a search warrant is not a "constitutional strait jacket." *United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir. 1988) (citation and internal quotations omitted). In interpreting search warrants, we must heed the Supreme Court's reminders to employ a "commonsense and realistic" approach, *United States v. Ventresca*, 380 U.S. 102, 108 (1965), and avoid "'hypertechnical' scrutiny . . . lest police officers be encouraged to forgo the warrant application process altogether." *United States v. Robinson*, 275 F.3d 371, 380 (4th Cir. 2001) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). These fundamental legal principles apply not only to determining the validity of a warrant but also to assessing its scope. *United States v. Srivastava*, 540 F.3d 277, 290, n. 16 (4th Cir. 2008).

*United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009). Based on these legal principles, Defendants argue: "Admittedly, the search warrant is brief; but the magistrate found probable cause to issue a search warrant and Lt. Wilkie at some point became aware of additional items that were stolen in addition to the lawn mower." (ECF No. 61 at 6.) "Furthermore," Defendants aver, "the officers had knowledge of the items stolen and actually had the Abbeville County officers on scene to identify the stolen property which was reported to be a mower, tools and tool bag with a D-ring." (*Id.*)

Defendants arguments, though assuredly made in good faith, cannot cure the obvious failure of the warrant to describe *any particular thing* that was to be seized. The warrant's description of property that is appropriate for seizure merely states "stolen property," then associates said property with the "theft of the listed orange in color all terrain mower in Abbeville County." (*See* ECF No. 41-10 at 3.) But this description only narrows the list of prospectively "seizable" items from: (1) everything inside Plaintiff's home, to (2) a set of unnamed, unidentified items putatively connected to a criminal event in a different county. The description does not actually describe *any thing*. It does not provide guidelines to assist an executing officer in knowing what he is looking for or how to identify it. *See LeBron*, 729 F.2d at 539. And it does not provide the requisite protection against subjecting Plaintiff's lawfully held property to a generalized search. *See id.* Needless to say, it is entirely ineffective in fulfilling its Fourth Amendment purpose. Additionally, the fact that the lawn mower was included in the warrant provides no assistance to Defendants in the way of particularity because the search of the home was entirely distinct from the presence of the mower in plain view on the property.[9]

The Court has searched the record in vain for solid confirmation that the additional items Defendants sought were adequately described, *or even mentioned*, to the local magistrate prior to the issuance of the warrant. According to the undisputed facts, Officer Moody, who was present at Plaintiff's home, contacted Lieutenant Wilkie, who was back at the sheriff's station, via telephone in order to begin the process of obtaining the

---

[9] The presence of the lawn mower on the property would have been a meaningful, relevant factor in the magistrate finding that there was probable cause to believe that contraband was located within the home, because it provided a connection between any such contraband and the commission of a crime. However, the mower was not an item sought with the warrant, so its presence in the description of property does not meaningfully enhance the *particularity* of the description of the *property to be seized*.

warrant. (Moody Dep., ECF No. 41-3, p. 27 ll. 7-13.) When questioned about what information he provided, Moody gave the following testimony:

> **Q.** And what did you tell Officer Wilkie about why he should get a search warrant?
>
> **A.** Because we had already had information that was pretty good information from the earlier incident from Jacqueline Drive, which was a report of the stolen four-wheeler. Based on that information, then going to [Plaintiff's residence] and seeing that mower that was clearly another part of the items stolen.
> And then there were some other items that were taken, some smaller tools – some kind of pouch, and some smaller tools, and – I don't know. Some other items. Being it could possibly be in that location.
>
> **Q.** Did you tell Officer Wilkie that one of the things you thought might be inside the house was the pouch or the bag?
>
> **A.** *I'm not sure exactly of our conversation on the phone.*
>
> **Q.** Well, would you have told him the property that you were looking for inside the house?
>
> **A.** Yes, sir, I would have told him there were some stolen items from Abbeville County, I'm sure.
>
> **Q.** Would you have described those items to him to give to the magistrate?
>
> **A.** *I can't recall.*
> *Well, I would have, yes, sir. It seems like I would have.*

(*Id.*, p. 27 l. 24 – p. 29 l. 1 (emphasis added).)

Wilkie gave inconsistent responses when asked whether he knew about the specific items being sought prior to writing the affidavit in support of the search warrant. At first, when asked whether Moody told him during their phone call what the additional items being sought might have been, Wilkie testified: "There were some tools, loose, I guess, like hand tools. It seems like there was an air compressor of some kind. And

maybe a – some kind of tool bag." (Wilkie Dep., ECF No. 32-12, p. 22 l. 21 – p. 23 l. 1.)

Wilkie then testified that after he finished the call with Moody he typed out the search

warrant and presented it to the magistrate. (*Id.*, p. 23 ll. 8-12.) But later in his deposition

Wilkie said he could not be sure whether Moody had described the items being sought:

> **Q.** You told me before that Mr. Moody, over the phone, had told you
> that they were looking for a stolen air compressor and some other tools, is
> that right?
>
> **A.** Other tools, correct.
>
> **Q.** And a bag, maybe?
> Does that sound right?
>
> **A.** Correct.
>
> **Q.** Is there a reason why, in the description of the property that you
> typed up, that you did not write that it was an air compressor and a bag?
>
> **A.** At the time when he called me, he was working in coordination
> with the Abbeville County investigators. And I – like I said, he explained to
> me that there were other items taken during that theft. *I can't say for sure
> that he specifically spelled out those particular items before I typed the
> search warrant up.*
>
> **Q.** Okay. So if he had specified them, would you have written them
> down, or would it just depend?
>
> **A.** Possibly.
>
> **Q.** What might it depend on?
>
> **A.** *If he had given me a positive description of each individual item,
> then, yes, I probably would have written it down. At this particular time, I
> wrote down what information and what facts he gave me.*

(*Id.*, p. 24 l. 24 – p. 25 l. 25 (emphasis added).) As noted by the Magistrate Judge, the

affidavit Wilkie made in support of the warrant offers no description of the items sought,

and simply indicates that "other items" were stolen along with the lawn mower. (*See* ECF

No. 41-10 at 4.)

In this context, the Court is not engaging in "hyper-technical scrutiny" by finding that the search warrant is facially invalid. *See Robinson*, 275 F.3d at 380. While the Court certainly has every incentive to avoid a situation where police forgo obtaining warrants altogether, *see id.*, the Court has an equally important interest in ensuring that police obtain valid warrants that serve the purpose envisioned by the Fourth Amendment. The warrant in this case does not meet that standard. It is revealing that Defendants, in their objections, state that Wilkie was made aware of the additional stolen items "at some point," and seek to rely on the Abbeville County officers "knowledge of the items stolen" as circumscribing the breadth of the warrant. (*See* ECF No. 61 at 6.) But if this type of reliance on officers' subjective knowledge was permitted to satisfy the particularity requirement, every description of property on every warrant might as well read: "Property that the officers involved in this case know to be connected with this crime."

An exhaustive search of Fourth Circuit case law has revealed no case where the description "stolen property" alone was deemed sufficient to satisfy the particularity requirement. While the Fourth Circuit has stated, "[a] warrant need not—and in most cases, cannot—scrupulously list and delineate each and every item to be seized[,]" *United States v. Phillips*, 588 F.3d 218, 225 (4th Cir. 2009), it does not follow that a complete absence of specificity with regard to the items sought is excusable. The Fourth Circuit cases that delineate the parameters of the particularity requirement generally hold that specific descriptions provided in a search warrant should not be construed in an

unreasonably narrow manner. *See, e.g.*, *United States v. Dargan*, 738 F.3d 643, 648 (4th Cir. 2013) (holding that seizure of a purchase receipt indicating the buyer's name was permissible where the warrant enumerated the items subject to seizure as including "[i]ndicia of occupancy, residency, of the premises . . . including but not limited to, utility and telephone bills, [and] canceled envelopes") (alterations in original); *United States v. Perry*, 560 F.3d 246, 251 (4th Cir. 2009), *as corrected* (Mar. 31, 2009) (holding that seizure of marijuana and firearms during search was permissible where, based on information provided by a confidential informant and the defendant's established reputation as a drug dealer, the warrant described the items to be seized as, *inter alia*, "US coins and currency, proceeds from the sale and delivery of controlled substances, *[c]rack [c]ocaine and other controlled substances*, scales and measuring devices, . . . drug paraphernalia, . . . *firearms and weapons*, . . . and fruits of the crimes listed in this application") (alterations and emphasis in original); *United States v. Uhrich*, 228 F. App'x 248, at *4 (4th Cir. 2007) (finding, in investigation of scheme to defraud mortgage lenders, that the warrant described evidence to be seized from title company locations with sufficient particularity because the warrant permitted the seizure only of documents associated with leader of scheme, his corporations, and his investors); *Robinson*, 275 F.3d 371 at 381 ("A search is not invalidated in its entirety merely because some seized items were not identified in the warrant.") (citing *United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir. 1997); *Anglin v. Dir., Patuxent Inst.*, 439 F.2d 1342, 1346-49 (4th Cir. 1971) (holding seizure of over 700 stolen items permissible where warrant authorized police to enter homeowner's trailer and search for 27 items of personal property

specifically described in the warrant, because police were duty bound to carry out their search in a thorough manner until items listed in warrant were found, homeowner was a known burglar, and many of the additional stolen items were both in plain view and thrust upon police by homeowner's wife). In other words, search warrants should not be deemed invalid simply because the officer(s) obtaining the warrant cannot perfectly anticipate all of the contraband they may find during the course of the search. But again, this does not excuse a complete absence of any descriptive detail to guide an officer's actions when executing the search.

In sum, "The particularity requirement is satisfied when an officer in possession of a search warrant describing a particular place to be searched can reasonably ascertain and identify the intended place to be searched and the items to be seized." *United States v. Talley*, 449 F. App'x 301, 302 (4th Cir. 2011) (holding that the particularity requirement was satisfied by a search warrant's cross-reference to documents attached and incorporated by reference) (citing *Steele v. United States*, 267 U.S. 498, 503 (1925)). The description of property in the instant search warrant fails to appraise an officer executing the warrant of the items to be seized. Therefore, the Court finds the warrant to be invalid, adopts the Magistrate Judge's analysis and recommendation, and overrules Defendants objection on this point.

The next step is to determine whether Defendants are entitled to qualified immunity. The Magistrate Judge correctly stated the law on this point (ECF No. 55 at 20), which is, "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not

comply with that requirement was valid." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819 (1982) ("If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."); *see also Leon*, 468 U.S. at 923 ("[D]epending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."). Consequently, the Magistrate Judge concluded that Defendants are not entitled to qualified immunity, that Plaintiff's motion for partial summary judgment should be granted with respect to her claim that her Fourth Amendment rights were violated when Defendants searched inside her residence and seized items pursuant to a facially invalid search warrant, and that Defendants' motion for summary judgment should be denied with respect to this claim. (ECF No. 55 at 20.)

Here, Defendants object by arguing that a § 1983 plaintiff alleging omissions from an affidavit "must establish that the officer failed to inform the magistrate of material facts that the officer knew would negate a finding of probable cause." (ECF No. 61 at 6.) Defendants cite *Miller v. Prince George's Cnty.*, 475 F.3d 621 (4th Cir. 2007), for the proposition that allegations of mere negligence or honest mistake are insufficient, and that the omission of a more specific description of the stolen property in the affidavit supporting the instant search warrant was at most negligent. (*Id.*) Thus, Defendants aver, the officers reasonably believed the search warrant to be valid, and conducted the search reasonably and in good faith, and are thereby entitled to qualified immunity. (*Id.*)

The *Miller* case is inapposite here. In *Miller*, the plaintiff alleged that police seized him pursuant to a warrant that was not supported by probable cause, due to intentional or recklessly indifferent misrepresentations and omissions in the warrant affidavit, and that the resultant criminal proceedings being terminated in his favor was sufficient to show a violation of his Fourth Amendment rights under § 1983. 475 F.3d at 627. The Fourth Circuit held that the officer who drafted the warrant affidavit was *not entitled* to qualified immunity because credible evidence in the record supported the existence of intentionally or recklessly false material misstatements and omissions, and it was clearly established that a police officer could not make such misstatements and omissions in order to obtain a warrant. *Id.* at 629-633. The Court risks stating the obvious by noting that *Miller* had nothing to do with the Fourth Amendment's particularity requirement and is insufficient to displace on point Supreme Court case law that dictates Defendants are not entitled to qualified immunity in this case. Accordingly, the Court overrules Defendants objection, adopts the Magistrate Judge's analysis and conclusion regarding qualified immunity, grants Plaintiff's motion for summary judgment with respect to the post-warrant search of the home and associated seizure, and denies Defendants' motion for summary judgment with respect to this claim.

**Use of Force During Arrest**

The Magistrate Judge concluded that a genuine issue of material fact exists with respect to the circumstances of Plaintiff's arrest and that Defendants are not entitled to summary judgment on Plaintiff's excessive force claim. (ECF No. 55 at 21.) The Report accurately states the law pertaining to the use of force in the course of making an arrest

and the Court incorporates it here without recitation. (*See id.* 20-21.) Accepting Plaintiff's version of events as true, and drawing all inferences in Plaintiff's favor,[10] she was grabbed while in the laundry room and pulled outside by Bridges. (Clark Dep., ECF No. 48-4, p. 142 l. 19 – p. 147 l. 23.) Plaintiff testified in her deposition that she was forced down to the ground on her knees and left elbow and suffered bruising as a result. (*Id.* p. 149 l. 18 – p. 150 l. 19; p. 199 l. 5 – p. 200 – l. 21.) However, she further testified that the bruising she sustained was not on her knees or her elbow, but in the vicinity of her abdomen. (*Id.* p. 200 l. 22 – p. 202 l. 23; p. 203 l. 5 – p. 205 l. 20.) Defendants deny that Plaintiff was ever put down to the ground and argue that Plaintiff has evidence only of bruises she received on her hips when she sat down in a chair. (ECF Nos. 45-1 at 16; 52 at 4.) The Court agrees with the Magistrate Judge that a genuine dispute of material exists regarding the circumstances of Plaintiff's arrest. Additionally, because this matter must await determination of the facts now in conflict, a qualified immunity analysis is inappropriate at this juncture. (*See* ECF No. 55 at 21-22.) Defendants made no objection to this portion of the Report, and the Magistrate Judge's analysis evinces no clear error. Accordingly, the Court adopts the Magistrate Judge's recommendation and denies Defendants motion for summary judgment on Plaintiff's excessive force claim.

**Federal Conspiracy**

The Magistrate Judge correctly states the law regarding claims for conspiracy to violate § 1983, in particular the requirement that a § 1983 plaintiff is required to produce evidence that the defendant(s) acted jointly, with an intent to commit an unlawful

---

[10] In determining whether a genuine issue has been raised, the Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

objective, and that some overt act was done in furtherance of the conspiracy. (ECF No. 55 at 22 (citing *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996)).) Like all § 1983 plaintiffs advancing conspiracy claims, Plaintiff has "a weighty burden to establish a civil rights conspiracy." *Hinkle*, 81 F.3d at 421. She need not produce direct evidence of a meeting of the minds, but she "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* (citing *Hafner v. Brown*, 983 F.2d 570, 576-77 (4th Cir. 1992); *Abercrombie v. City of Catoosa, Okl.*, 896 F.2d 1228, 1230–31 (10th Cir. 1990); *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983)). Accordingly, "to survive a properly supported summary judgment motion, [Plaintiff's] evidence must, at least, reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* The Magistrate Judge concluded that Plaintiff has failed to produce any such evidence, and the Court agrees. (*See* ECF No. 55 at 22.)

In her objections, Plaintiff argues that the Magistrate Judge erred in recommending that Defendants' motion for summary judgment be granted with respect to Plaintiff's § 1983 conspiracy claim. (ECF No. 63 at 3-4.) Plaintiff avers that Defendants "agreed" to search her curtilage prior to obtaining a warrant, to search inside her home once they obtained the warrant, and to arrest her "without requesting that the magistrate issue an arrest warrant," and that this "agreement" supports her conspiracy claim. (*Id.* at 3.) Additionally, she states, "valuable evidence relating to Ms. Clark's excessive-force claim—namely, pictures of her right after her arrest—were destroyed." (*Id.*) Plaintiff

argues that these circumstances are enough to merit a trial on her conspiracy claim. (*Id.*)

The Court finds that Plaintiff's objections reveal no error in the Magistrate Judge's analysis. There is no evidence in the record that would reasonably lead to an inference that Defendants intended to violate Plaintiff's Fourth Amendment rights. *See Hinkle*, 81 F.3d at 421-423. Accordingly, the Court adopts the Magistrate Judge's recommendation and grants Defendants' motion for summary judgment on this claim.

**State Civil Conspiracy Claim**

The Report accurately states the law regarding a civil conspiracy claim in South Carolina and the Court incorporates it here without recitation. (ECF No. 55 at 22-23.) The Magistrate Judge concluded that Plaintiff has failed to identify any independent wrongdoing that is separate and distinct from the alleged wrongful acts pled in her other causes of action. (ECF No. 55 at 23.) Additionally, Plaintiff has failed to show that Defendants joined together for the purpose of injuring her and that she suffered any special damages. (*Id.*) These failures are fatal to Plaintiff's state civil conspiracy claim. *See Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874-75 (S.C. 2009). The Magistrate Judge recommends that Defendants' motion for summary judgment be granted with respect to this claim. Plaintiff did not object to this conclusion, and the Court finds that it evinces no clear error. Accordingly, the Court adopts the Magistrate Judge's analysis and recommendation pertaining to the state civil conspiracy claim.

**South Carolina Tort Claims Act Claim**

The Report accurately states the law regarding claims brought pursuant to the South Carolina Tort Claims Act ("SCTCA") and the Court incorporates it without

recitation. (ECF No. 55 at 24.) The Magistrate Judge found that Plaintiff's SCTCA claim is limited to alleged actions taken by Defendants while acting within the course and scope of their employment, and thus is brought against Sheriff Defendants only. (ECF Nos. 24 ¶¶ 45-46; 55 at 24.) Accordingly, the Magistrate Judge properly declined to address arguments made by the parties regarding Individual Defendants' purported liability under the SCTCA. (ECF No. 55 at 24.)

In their motion for summary judgment, Defendants argue that there is no evidence of any alleged deficiency in Sheriff Defendants' policies, training, and/or supervision that would give rise to liability to support Plaintiff's SCTCA claim. (ECF No. 45-1 at 25-27.) In her opposition, Plaintiff contends that her SCTCA cause of action is not raising a claim regarding lack of training, but rather claims of conversion/trespass and false arrest/imprisonment. (ECF No. 48 at 8-10.) In their reply, Defendants devote one or two sentences to each of these state law claims and cite no legal authority. (ECF No. 52 at 7.) Consequently, the Magistrate Judge recommends that summary judgment should be denied with respect to Plaintiff's SCTCA claim. (ECF No. 55 at 24-25.) Defendants made no objection to this recommendation, and the Court hereby adopts it. Accordingly, Defendants motion for summary judgment is denied with respect to the SCTCA claim.

**Remaining Issues**

### A. Destruction of Photographs

During the course of Plaintiff's arrest, Moody took photographs of her with a cell phone issued to him by the Laurens County Sheriff's Office. (Defs. Interrog. Ans., ECF No. 32-14 ¶ 10(E).) Defendants claim that the photographs were taken in order to

31

document the scene and/or Plaintiff's condition at the time of her arrest. (*Id.*) Bridges testified that he instructed Moody to take the photographs when Plaintiff began to make statements, such as, "Don't beat me, don't beat me." (Bridges Dep., ECF No. 41-4, p. 22 ll. 15-25.) He represents that he wanted the photographs of Plaintiff in order to show that nothing untoward happened to her that night. (*Id.*) Moody testified that Bridges asked him to take a few pictures when Plaintiff, who was handcuffed, began exhibiting "strange behavior," including yelling out, "Don't beat me." (Moody Dep., ECF No. 41-3, p. 31 l. 3 – p. 32 l. 13.) Moody further stated that he took no more than five photographs with his work-provided cell phone. (*Id.*) The photographs were apparently lost because they were never transferred and/or downloaded to the Sheriff's Office file and, upon Moody's departure from employment with Laurens County, the cell phone that had been issued to him was cleared for re-use and any photographs were erased and/or deleted. (ECF No. 32-14 10(E).)

In her motion for partial summary judgment, Plaintiff makes various assertions about the erasure and/or deletion of the photographs, including the following bold averment: "No dispute exists that the destruction was in violation of federal and state law." (ECF No. 32-1 at 13-14.) After citing *Brady v. Maryland*, 373 U.S. 83 (1963)[11] and a smattering of federal common law and state common law and statutes regarding the preservation of evidence and public records, Plaintiff makes clear that she is not claiming the destruction of the photographs as an independent basis for recovery; rather, she is seeking a finding from the Court that the destruction of the photographs was unlawful and a jury instruction indicating as much. (ECF Nos. 32-1 at 14; 46 at 6; 48 at 8 n.5.) The

---

[11] This citation is particularly curious given that Plaintiff was ultimately not prosecuted for any crime.

Magistrate Judge concluded that requests for jury instructions are premature at this juncture (ECF No. 55 at 10 n.7), and the Court agrees.

In her objections, Plaintiff argues that the Magistrate Judge incorrectly refused to decide the illegality of the destruction of the photographs. (ECF No. 63 at 3.) After affirming that she does not seek damages for the destruction of evidence, and acknowledging that the impropriety of the destruction is a matter of dispute between the parties, Plaintiff asserts, "Deciding that impropriety now will help resolve this issue for the parties and will enable them to know whether they need to introduce evidence on this point at trial." (*Id.*) Finally, Plaintiff argues that this putatively unlawful destruction of evidence is relevant to whether her federal conspiracy claim should proceed to trial. (*Id.*)

The Court confesses confusion at Plaintiff's self-assurance regarding the unlawfulness of the destruction of the photographs. The Court has not been presented with any evidence that criminal charges were pending against Plaintiff when the photographs were erased, though Plaintiff makes this unsupported assertion in her motion for partial summary judgment (*see* ECF No. 32-1 at 13). As it stands now, the Court knows only that the charges originally brought against Plaintiff were *nol prossed* when Mr. Patton pled guilty to related charges for receiving stolen property and possession of marijuana. (*See* Moody Dep., ECF No. 32-10, p. 54 ll. 10-15.) There is also no evidence to support the notion that Defendants knew of, or should have reasonably anticipated, Plaintiff's § 1983 lawsuit when the photographs were destroyed, particularly in light of the facts that Plaintiff did not file her complaint until a full three years after the fact and Defendants' purported reason for taking the photographs was to

33

document the *absence* of injury. Lastly, there is no evidence to show that the destruction of the photographs is somehow tied to Plaintiff's unsubstantiated federal conspiracy claim.

It is possible that the deletion of the photographs was unlawful. It is also entirely possible that the deletion of the cell phone's contents was merely an incidental effect of routine employment processes at the Laurens County Sheriff's Office and that there was no duty to preserve the photographs. Plaintiff will need to do *much* more to win the declaration and jury instruction that she seeks. Accordingly, Plaintiff's objection is overruled and the Court adopts the Magistrate Judge's conclusions regarding the jury instruction issue.

### B. Recovery for Seizure of Other Property and Damage to Home

Finally, in her objections, Plaintiff argues that the Court should clarify that she can recover damages for any of her property that she proves was taken from her home or damaged inside of it during the unlawful search. (ECF No. 63 at 4.) This goes without saying. Provided that Plaintiff can make the requisite proof that additional items (other than guns and marijuana) were taken, and/or that the property damage in question was proximately caused by Defendants, of course she can recover. To this point, however, the record contains nothing but conclusory assertions about these putative additional damages.

### CONCLUSION

After careful consideration of the relevant motions, responses, replies, and objections, the Court finds that Plaintiff's and Defendants' objections are without merit

and the Magistrate Judge's conclusions are correct. Accordingly, for the reasons stated above and by the Magistrate Judge, the Court overrules the objections, adopts the Report, and incorporates it by specific reference herein. It is therefore ORDERED that Plaintiff's motion for partial summary judgment (ECF No. 32) is granted in part and denied in part, and Defendants' motion for summary judgment (ECF No. 45) is granted in part and denied in part, as more particularly set forth in the Report (*see* ECF No. 55 at 25-26).

**IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

September 30, 2016
Greenville, South Carolina